UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                              ) | 2:23-cr-00030-ACA-SGC |
| ) | |
| MOHAMMAD SHAHID JENKINS ) | |

## PLEA AGREEMENT

The government and the Defendant, **MOHAMMAD SHAHID JENKINS**, hereby acknowledge the following plea agreement in this case:

### PLEA

The Defendant agrees to plead guilty to **COUNTS ONE** and **THREE** of the Indictment filed in the above-numbered and -captioned matter. In exchange, the United States agrees to, at sentencing, recommend the disposition specified below, subject to the conditions in Sections VII and VIII.

### TERMS OF THE AGREEMENT

**I.   MAXIMUM PUNISHMENT**

The Defendant understands that the maximum statutory punishment that may be imposed for the crime of deprivation of rights under color of law in violation of Title 18, United States Code, Section 242, as charged in **COUNT ONE**, is:

A.   Imprisonment for not more than ten years;

B.   A fine of not more than $250,000; or

  C. Both A and B;

  D. Supervised release of not more than 3 years; and

  E. A special assessment fee of $100 per count.

The Defendant understands that the maximum statutory punishment that may be imposed for the crime of falsification of records in violation of Title 18, United States Code, Section 1519, as charged in **COUNT THREE**, is:

  A. Imprisonment for not more than twenty years;

  B. A fine of not more than $250,000; or

  C. Both A and B;

  D. Supervised release of not more than 3 years; and

  E. A special assessment fee of $100 per count.

## II. FACTUAL BASIS FOR PLEA

The government and the Defendant agree that the government is prepared to prove, at a minimum, the following facts at the trial of this case:

### A. William E. Donaldson Correctional Facility

William E. Donaldson Correctional Facility (WDCF) is an Alabama state prison within the Alabama Department of Corrections (ADOC). It is in Bessemer, Alabama, in Jefferson County, within the Northern District of Alabama.

### B. Defendant Mohammad Shahid Jenkins

Defendant Mohammad Shahid Jenkins was employed by ADOC as a Lieutenant and Shift Commander.

### C. The Victims

At all material times, V.R. and D.H. were inmates at WDCF.

### D. Defendant Admits Guilt on Counts One and Three

Defendant admits that, on or about February 16, 2022, while acting under color of law within the Northern District of Alabama, he willfully deprived V.R. of the right secured and protected by the Constitution and laws of the United States, to be free from excessive force amounting to cruel and unusual punishment. Defendant further admits that he used dangerous weapons—chemical spray and a can of chemical spray—and caused bodily injury to V.R. Defendant also admits that, after his assault of V.R., acting in relation to or in contemplation of a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States, Defendant knowingly concealed, covered up, falsified, or made a false entry in a record or document related to the use of force against V.R. with the intent to impede, obstruct, or influence the investigation and proper administration of that matter.

### E. The Assault of V.R.

WDCF surveillance video captured Defendant's assault of V.R. in the east gym on February 16, 2022. Defendant is now aware that his assault of V.R. was captured on video. In the gym, Defendant, who was on duty, handcuffed V.R.'s right arm to a bench inside of a holding cell. Defendant then kicked V.R.—who was lying on the cell floor—once on his back. Defendant left the cell and closed the door with V.R. restrained inside. V.R. stayed handcuffed to the bench by his right arm for the rest of the incident, and he did not pose a threat in any way. Defendant, however, re-entered the cell to re-assault V.R. numerous times.

Within a few seconds, Defendant returned and opened the cell door. As V.R. sat on the bench and attempted to shield his head with his arms, Defendant sprayed V.R. in the face with OC spray and hit him in the face once with the OC spray can. Defendant then sprayed V.R. again—this time inside of his mouth. By virtue of his experience and training, Defendant knew about the effects of OC spray, which include burning sensations in the face, eyes, and throat, eye pain and possible damage, and loss of breath. Defendant again left the cell and closed the door.

Within one minute, Defendant re-entered the cell and hit V.R.'s torso once and V.R.'s back once, each with a closed fist. Defendant again left and closed the

Defendant's Initials ____

cell door.

Less than one minute later, Defendant again reentered the cell, slapped V.R. across his face with an open hand, took V.R.'s shoes off his feet, and hit V.R. once on his face and once on his head with his own shoe. Once he finished using V.R.'s shoes to assault him, Defendant kicked and threw the shoes out of the cell. For the fourth time, Defendant left the cell and closed the door behind him.

Within another minute, Defendant re-entered the cell and slapped V.R. across his face with an open hand before leaving the gym and returning to the WDCF shift office. This series of attacks took place for approximately five minutes outside of the presence of other inmates and corrections officers. Defendant's attacks on V.R. caused V.R. to suffer bodily injury, including pain, bruising on V.R.'s face around his right eye, redness on his torso to the left side of his chest, and abrasions on both of his knees.

Defendant was a Lieutenant with more than 20 years of experience in law enforcement. He was also serving as Shift Commander during his assault of V.R. Defendant knew that using force to punish or retaliate was not allowed, and he knew the consequences of doing so, including possible criminal prosecution.

### 1. *Defendant wrote a false report*

Following the gym assault, Defendant authored a false incident report about his encounter with V.R. First, Defendant claimed that he escorted V.R. from the dining hall to the shift office. Second, Defendant omitted entirely from his report his use of force on V.R. in the WDCF east gym. However, surveillance video shows that Defendant took V.R. from the dining hall to the WDCF east gym, not to the shift office. The video further shows that Defendant repeatedly assaulted V.R. in the gym. Defendant admits that these actions are material facts. Defendant further admits that, by virtue of his training and experience, he knew that ADOC training and policy required that all uses of force be documented, to include both the amount and type of force used, as well as the inmate conduct occasioning the use of force, and that unlawful uses of force could lead to criminal investigation and prosecution. He further knew that his conduct was the type that could give rise to an investigation. Therefore, when he failed to include these facts in his report, he did so to impede, obstruct or influence that investigation.

### 2. *Defendant lied to investigators*

Defendant's Initials _NM_

On March 9, 2022, Defendant waived his *Miranda* rights and spoke with state investigators and the FBI. As he had written in his incident report (but as contradicted by the video footage), Defendant denied using any force on V.R. in the gym. Defendant claimed that, in the gym, he simply "secured" V.R., "watched him for a minute," and "then called Sgt. [A.L.]" to take V.R. to the infirmary. Even after he was confronted with the fact of the video, Defendant denied that he did anything to V.R. in the gym beyond securing and watching V.R. before calling for A.L. to transport him.

### F. The assault of D.H.

On November 29, 2021, while on duty at WDCF, Defendant transported D.H.—who was handcuffed behind his back—from his cell to the WDCF east gym. Surveillance video shows that, during the transport, Defendant repeatedly sprayed D.H. with OC spray without cause while D.H. was compliant. Defendant used "Cell Buster" to spray D.H. during transport. "Cell Buster" is a more concentrated version of regular OC spray. It is designed and intended to be used for cell extractions—to be sprayed under doors where it can disperse in a cell—and it is not intended to be sprayed directly on inmates' faces. As D.H. suffered from the effects of the OC spray, Defendant also struck D.H. in the head with the OC spray can. After this strike, Defendant sprayed D.H. in the face again.

In the east gym, D.H. remained handcuffed and compliant and sat down on a bench inside of a cell within the gym. There, Defendant delivered an open-handed strike to D.H.'s head, as D.H. was suffering from the effects of OC spray.

**The Defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the Defendant's sentence. The Defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the Defendant and/or any co-conspirators may have committed.**

_____          __8/2/23__
MOHAMMAD SHAHID JENKINS                   Date

Defendant's Initials ____

## III. RECOMMENDED SENTENCE

The United States agrees that, subject to the limitations in Section VIII regarding subsequent conduct, and pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), it will recommend the following disposition:

A. That the Defendant be awarded an appropriate reduction in offense level for acceptance of responsibility;

B. That the Defendant be ordered into the custody of the Bureau of Prisons beginning at such time as ordered by the Court and incarcerated for a term within the advisory United States Sentencing Guideline range as that is determined by the Court on the date that the sentence is pronounced;

C. That following the said term of imprisonment, the Defendant be placed on supervised release for a period to be determined by the Court, subject to the standard conditions of supervised release as set forth in U.S.S.G § 5D1.3, and any special condition(s) ordered by the Court; and

D. That the Defendant pay a special assessment fee of $100 per count, said amount due and owing as of the date sentence is pronounced.

## IV. WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF

**In consideration of the recommended disposition of this case, I,**

MOHAMMAD SHAHID JENKINS, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the court might impose. Further, I waive and give up my right to argue that: (1) the statutes to which I am pleading guilty are unconstitutional, and (2) the admitted conduct does not fall within the scope of those statutes. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255.

The Defendant reserves the right to contest in an appeal or post-conviction proceeding the following:

A. Any sentence imposed in excess of the applicable statutory maximum sentence(s);

B. Any sentence imposed in excess of the guideline sentencing range determined by the Court at the time sentence is imposed; and

C. Ineffective assistance of counsel.

The Defendant acknowledges that before giving up these rights, the Defendant discussed the Federal Sentencing Guidelines and their application to the Defendant's case with the Defendant's attorney, who explained them to the Defendant's

satisfaction. The Defendant further acknowledges and understands that the Government retains its right to appeal where authorized by statute.

**I, MOHAMMAD SHAHID JENKINS, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.**

_____          _8/2/23_____
MOHAMMAD SHAHID JENKINS            Date

## V.   UNITED STATES SENTENCING GUIDELINES

Defendant's counsel has explained to the Defendant, that in light of the United States Supreme Court's decision in <u>United States v. Booker</u>, the federal sentencing guidelines are **advisory** in nature. Sentencing is in the Court's discretion and is no longer required to be within the guideline range. The Defendant agrees that, pursuant to this agreement, the Court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VI.   AGREEMENT NOT BINDING ON COURT

The Defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the Defendant and that any sentence recommended by the government is **NOT BINDING UPON THE COURT**, and

that the Court is not required to accept the government's recommendation. Further, the Defendant understands that, if the Court does not accept the government's recommendation, the Defendant does not have the right to withdraw the guilty plea.

### VII.  VOIDING OF AGREEMENT

The Defendant understands that if the Defendant (a) violates any federal, state, or local law, or any condition of pretrial release after entering into this plea agreement, (b) moves the Court to accept a plea of guilty in accordance with, or pursuant to, the provisions of *North Carolina v. Alford*, 400 U.S. 25 (1970), (c) tenders a plea of *nolo contendere* to the charges, (d) violates any other term of this plea agreement, and/or (e) does or says anything that is inconsistent with the acceptance of responsibility, the plea agreement will become NULL and VOID at the election of the United States, and the United States will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein. Further, such election will not entitle the Defendant to withdraw a previously entered plea.

### VIII.  SUBSEQUENT CONDUCT

**The Defendant understands that, should the Defendant violate any condition of pretrial release or violate any federal, state, or local law, or should the Defendant say or do something that is inconsistent with acceptance of responsibility, the United States will no longer be bound by its obligation to**

Defendant's Initials ___

make the recommendations set forth in Section III of the Agreement, but instead, may make any recommendation deemed appropriate by the United States Attorney in her sole discretion.

## IX. OTHER DISTRICTS AND JURISDICTIONS

The Defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## X. COLLECTION OF FINANCIAL OBLIGATION

To facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to fully disclose all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The Defendant also will promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs. The Defendant also agrees that the Defendant's financial statement and disclosures will be complete, accurate, and truthful. Finally, the Defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the Defendant to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

## XI. AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

As part of the Defendant's plea agreement, the Defendant admits to the above facts associated with the charges and relevant conduct. The Defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the Defendant's range of punishment under the advisory sentencing guidelines. The Defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct. This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors which may constitute or relate to relevant conduct. Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the Defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any.

### XII. TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS

Unless otherwise specified herein, the Defendant understands and acknowledges that this agreement does not apply to, or in any way limit, any pending or prospective proceedings related to defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under

Defendant's Initials ___

federal law, a broad range of crimes are removable offenses, including the offenses to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

### XIII. DEFENDANT'S UNDERSTANDING

I have read and understand the provisions of this agreement consisting of **14 pages**. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that, by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence on my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO**

Page **12** of **14**                                                                 Defendant's Initials ____

INDUCE ME TO PLEAD GUILTY.

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:

_____

I understand that this Plea Agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this Agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this Agreement, both individually and as a total binding agreement.

8/2/23
DATE

_____
MOHAMMAD SHAHID JENKINS
Defendant

### XIV. COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses. My client has conveyed to me that my client understands this Agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment. I concur in the entry of the plea on the terms and conditions set forth herein.

8/2/23
DATE

_____
JAKE WATSON
Defendant's Counsel

8/2/23
DATE

_____
KATE BOUNDS
Defendant's Counsel

## XV. GOVERNMENT'S ACKNOWLEDGEMENT

I have reviewed this matter and this Agreement and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

PRIM F. ESCALONA
United States Attorney

8/7/23
DATE

_____
GEORGE A. MARTIN, JR.
Assistant United States Attorney

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

8/7/23
DATE

_____
ANNA GOTFRYD
Attorney, Civil Rights Division
United States Department of Justice

Defendant's Initials ___