UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MOHAMMAD SHAHID JENKINS <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) NO. 2:23-CR-00030-ACA-SGC <br> ) <br> ) <br> ) <br> ) <br> ) |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States recommends that the Court impose a sentence within the Sentencing Guidelines range of 87 to 108 months. This sentencing memorandum provides support for that recommended sentence and argues that the recommended sentence is sufficient but not greater than necessary to achieve the goals of sentencing and address the 3553 factors.

## INTRODUCTION

Defendant Mohammad Shahid Jenkins, a shift commander at the Alabama Department of Corrections with 20 years of experience as a corrections officer, swore an oath to protect the constitutional rights of people in his custody and ensure that officers under his command did the same. Instead, the defendant committed vicious, premeditated assaults on two people he was sworn to protect, flaunted his powerful position by taunting his victims in front of more junior officers, and attempted to cover up his assaults by failing to file a report or by filing a false report and making false statements to criminal investigators.

1

A sentence within the recommended Guidelines range is necessary to account for the circumstances of Jenkins' offenses, especially the defendant's abuse of his high-ranking position, 18 U.S.C. § 3553(a)(1); reflect the seriousness of his violent crimes, *id*. § 3553(a)(2)(A); and deter the defendant and other law enforcement officers from committing crimes while cloaked in official authority, *id*. § 3553(a)(2)(B). The Court should send a strong message that the defendant's violent abuse of people in his custody has serious consequences.

## I.     FACTUAL BACKGROUND

### A. The assault of V.R.

The defendant assaulted V.R. multiple times on February 16, 2022, in retaliation for an altercation that occurred earlier that day in the dining hall in which V.R. allegedly struck the defendant a single time near Donaldson's dining hall. After the dining hall altercation, the defendant escorted V.R. to a holding cell in Donaldson's east gym and handcuffed V.R.'s right arm to a bench. No other officers were around, but the cell was visible on the prison's surveillance video. As V.R. remained handcuffed to the bench and not posing a threat, the defendant then assaulted him multiple times. The United States plans to offer the video of this incident during sentencing.

The defendant's multiple, premediated assaults caused V.R. to suffer bodily injury, including pain, bruising on his face around his right eye, redness on his torso to the left side of his chest, and abrasions on both of his knees. The United States plans to offer the video of the defendant's taunting and touching V.R. in the infirmary following the initial assault.

Following the assaults, the defendant authored a false incident report that claimed he escorted V.R. from the dining hall to the shift office—rather than taking V.R. to the gym where

2

the defendant beat him. The defendant omitted entirely from his report his use of force on V.R. in the east gym. The defendant did so knowing that the Alabama Department of Corrections' training and policy required officers to document all uses of force. The defendant acknowledged in his plea agreement that he falsified the report to obstruct a criminal investigation into his beating of V.R.

### B. The assault of D.H.

On November 29, 2021, the defendant transported D.H.—who was handcuffed behind his back—from his cell to the WDCF east gym. Surveillance video shows that, during the transport, the defendant repeatedly sprayed D.H. with OC spray without cause while D.H. was compliant. The defendant also used "Cell Buster" to spray D.H. during transport. "Cell Buster" is a more concentrated version of regular OC spray. It is designed and intended to be used for cell extractions—to be sprayed under doors where it can disperse in a cell—and it is not intended to be sprayed directly on inmates' faces. As D.H. suffered from the effects of the OC spray, the defendant also struck D.H. in the head with the OC spray can. After this strike, the defendant sprayed D.H. in the face again. Like with V.R., the defendant took D.H. to the east gym. In the east gym, D.H. remained handcuffed and compliant and sat down on a bench inside of a cell within the gym. There, the defendant delivered an open-handed strike to D.H.'s head, as D.H. was suffering from the effects of OC spray. The United States will offer the videos of the defendant's assault of D.H.

## II.    SENTENCING GUIDELINES

The United States Probation Office for the Northern District of Alabama determined that the defendant's total offense level was 29. Defendant Jenkins is in criminal history category I,

resulting in a recommended Guidelines range of 87–108 months.  The Government agrees with these calculations.

### III. SENTENCING RECOMMENDATION

The Government recommends that this Court impose a Guidelines sentence within the range of 87 to 108 months.  When fashioning an appropriate sentence for a defendant, a court must first consider the applicable guidelines range under 18 U.S.C. § 3553(a)(4).  Although the sentencing guidelines are advisory, they are the "starting point and the initial benchmark" for federal sentencing.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  Once a court has determined the appropriate sentencing range, it should then consider that range in light of the other relevant factors specified by 18 U.S.C. § 3553(a).  *Id*.

Consideration of the 3553(a) factors demonstrates that a Guidelines sentence is necessary.  ***First***, the severity of the defendant's premeditated, violent offenses warrants a guidelines sentence.  The defendant punched V.R. multiple times with a closed fist, discharged pepper spray into his face and mouth, struck him with a metal canister, slapped him in the face, and assaulted him with a shoe.  Unlike many situations where law enforcement officers use force, the defendant was not faced with a rapidly evolving threat that required him to make a split-second decision.  Rather, he carried out pre-formed plans to beat a person in his custody who was calm, compliant, and restrained.  The defendant's brutal assaults were purely retaliatory—motivated by a desire to inflict pain to retaliate against an inmate who had previously allegedly struck the defendant a single time near the dining area.  Throughout the premediated beatings, V.R.—a 60-year-old man—remained handcuffed to a metal bench, often lying or sitting on the ground as he tried to shield himself and fend off the defendant's blows.  The defendant inflicted pain solely to punish V.R.,

4

not for any legitimate law enforcement purpose.

The defendant beat V.R. despite knowing—through his extensive training and experience––that officers are never permitted to use force as punishment.  The defendant's knowledge of the wrongfulness of his conduct is underscored by the fact that he filed a false incident report and lied to investigators to cover it up.

**Second**, a Guidelines sentence is also warranted to reflect the extent of the defendant's abuse of his high-ranking position.  The defendant was the Shift Commander at Donaldson, where he was entrusted with the safety of people in his custody and responsible for the conduct of the officers working under his command.  Consequently, the defendant's crimes not only injured V.R., they set a dangerous example for other officers and risked eroding public trust in law enforcement.  For those reasons, crimes committed by law enforcement officers are often considered more serious at sentencing than comparable crimes committed by other defendants. *See United States v. Castro*, 573 F. App'x 214, 218 (3d Cir. 2014) (affirming upward variance for a former high-ranking police official where the court cited the need to "signal to the police and to the citizenry . . . that criminal conduct by police officers will not be tolerated"); *United States v. McQueen*, 727 F.3d 1144, 1157 (11th Cir. 2013) (reversing a below-Guidelines sentence in an excessive force case as "a clear error of judgment" because such a crime is a "particularly serious offense").  Indeed, "[a] defendant's status as a law enforcement officer is often times more akin to an aggravating as opposed to a mitigating sentencing factor, as criminal conduct by a police officer constitutes an abuse of a public position."  *United States v. Thames*, 214 F.3d 608, 614 (5th Cir. 2000); *see also United States v. LaVallee*, 439 F.3d 670, 708 (10th Cir. 2006) ("[I]n many instances, committing a crime while acting under color of law will result in a higher sentence – as

5

it did in this case – rather than a lower sentence."); *United States v. Strange*, 370 F. Supp. 2d 644, 651 (D.N.D. 2005) ("When people who are supposed to enforce our law . . . end up violating someone's constitutional rights, it is a very serious thing in a community.").

A Guidelines sentence is therefore necessary to capture the true nature of the defendant's abuse of his official authority.

***Third***, a significant sentence is also necessary to provide general and specific deterrence. The defendant flaunted his authority by taunting his victims in front of other, more junior, officers, then attempted to evade criminal responsibility by submitting a false incident report and making false statements to criminal investigators. A Guidelines sentence is therefore necessary to ensure that the defendant recognizes the harm he inflicted and to deter him from engaging in other abuses in the future. A significant sentence is likewise necessary to deter future similar conduct by other law enforcement officers. The Court should send a message that officers who abuse people in their custody are not immune from consequences. *See Castro*, 573 F. App'x at 218 (upward variance to "signal to the police . . . that criminal conduct by police officers will not be tolerated"); *McQueen*, 727 F.3d at 1158 (noting, in the context of a prison beating case, that "[t]he need for the criminal law to deter seems especially compelling here"). The need for general deterrence is especially important here, where the defendant was a senior officer, not a rookie officer with minimal experience or training, and where his crimes were premeditated. A lesser sentence in these circumstances would send the signal that the abuse of individuals in official custody is not deserving of serious sanction and the law does not apply with equal force to law enforcement officers.

The defendant was a powerful officer—he served as a Lieutenant, Shift Commander, and

had 20 years of experience in law enforcement. Rather than protecting the men entrusted to his care and setting a good example for junior officers, the defendant abused his authority by attacking two restrained inmates who posed no threat on two different occasions. When assaulting V.R., the defendant took breaks in between attacks to catch his breath and then re-attack the victim. When assaulting D.H., the defendant sprayed "Cell Buster" directly on the victim's face. His egregious attacks on these two men also increases the need for a guidelines sentence in this case.

## IV.  CONCLUSION

For the foregoing reasons, the United States respectfully asks the Court to sentence defendant Jenkins to between 87 and 108 months in prison, followed by three years of supervised released. This sentence is sufficient, but not greater than necessary, to account for the severity of the defendant's conduct and accomplish the interests that Section 3553 prescribes.

Respectfully Submitted,

PRIM F. ESCALONA
United States Attorney

*/s/ George Martin*
George Martin
Assistant United States Attorney
1801 Fourth Avenue North
Birmingham, AL 35203
(205) 244-2001

KRISTEN CLARKE
Assistant Attorney General

*/s/ Anna Gotfryd*
Anna Gotfryd
Attorney, Civil Rights Division
United States Department of Justice

**CERTIFICATE OF SERVICE**

I hereby certify that on this, the 11th day of December, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

*/s/ Anna Gotfryd*
Anna Gotfryd
Attorney, Civil Rights Division
United States Department of Justice
