IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| v. | ) Case No: 2:23-CR-030-ACA-SGC |
| | ) |
| **MOHAMMAD SHAHID JENKINS** | ) |

### Motion for Downward Variance and Sentencing Memorandum

After graduating high school Mohammad Shahid Jenkins joined the United States Marine Corps. He was 18 years old. The Marines provided Mr. Jenkins every opportunity one expects. For him, the Marines, provided an opportunity to serve his Country, escape poverty, learn to protect himself, build self-esteem, and escape inner-city Birmingham.

Mr. Jenkins parents divorced when he was young. He remembers growing up in government housing, his family struggling financially, and suffering from household violence, where he was "punched and slapped by his stepfather on a regular basis." *Id*. Mr. Jenkins' stepfather was, Larry Worsham. Mr. Worsham was murdered when Mr. Jenkins was only 12 years old. That same year, his father, Thomas Lewis Jenkins, was murdered by his girlfriend. (PSR at ¶ 47.) His mother, Patricia Powell, recalls his father's death naturally crushed her son. She remembers carrying him to the funeral the very day that he learned his father died.

The same year that Mr. Jenkins' biological father was murdered, Mr. Worsham was murdered by his best friend. Both of his fathers were murdered when Mr. Jenkins was 12 years old.

Very present in Mr. Jenkins life and childhood home was his older brother Martinas, age 53. Martinas suffers from cerebral palsy. Because of complications at birth, Martinas requires 24-hour care. Martinas has comprehension issues, is nonverbal, and requires a diaper and other special care. Mr. Jenkins has been a caretaker and protector of Martinas for as long as he can remember. They attended school together, although traveling separately with Martinas taking a special need's bus. Having a brother with special needs was tough, especially in a home financially strapped. It became a source of bullying in the neighborhood and at school while growing up. Mr. Jenkins believes that also sparked his interest in serving in the military and later in law enforcement.

When Mr. Jenkins graduated from Jackson Olin High School in 1989, he saw the Marines as a route to serve and protect. That's where he saw his life's trajectory. He never intended to become the person that brings him before this Court for sentencing. In fact, he saw the Marine Corps as an avenue to learn to be a person of integrity.

During his military service, he believed he was a achieving these goals. As noted in his DD-214, he earned a Combat Action Ribbon, participated in Operation Desert Shield, Operation Desert Storm, and his character of service was Honorable. Exhibit 1.

Mr. Jenkins was released from active duty on November 7, 1993. Mr. Jenkins began working as a correctional officer at William E. Donaldson Correctional Facility in Bessemer in 1997 and stayed employed there until March 2022.

The Indictment in the instant case was an awakening for him to seek help for his mental health. He sought treatment from the Veterans Affairs ("VA") Medical Center in Birmingham, Alabama for reoccurring suicidal ideations with overwhelming feelings of worthlessness and other symptoms of deep depression. In 2023, Birmingham VA records show he was diagnosed with chronic post-traumatic stress disorder (PTSD), severe depression, and insomnia. (PSR at ¶ 54.) Mr. Jenkins had been self-medicating with alcohol. He failed to seek appropriate medical attention for fear of losing his career in law enforcement, either with the Alabama Department of Corrections or as an officer with the Lipscomb Police Department. (PSR at ¶ 66.) As a result of his arrest in the instant offense, he stopped using alcohol. *Id.* at 58. He began taking medication for depression and PTSD.

H. Randall Griffith, Ph.D., ABPP-CN, interviewed Mr. Jenkins and reviewed records from the Birmingham VA Medical Center. Dr. Griffith provided undersigned counsel a report for mitigation purposes, which his attached under seal. (PSR at 54; Dr. Griffith Report, pages 1-2).

Undoubtedly, working in the Alabama Department of Corrections is taxing at best, especially when coming from the trauma of serving in combat overseas and suffering from untreated PTSD. Mr. Jenkins is asking this Court to take this into consideration when considering his sentence. "Indeed, correctional officers across the country have been found to suffer from PTSD at rates equivalent to those to Iraq and Afghanistan war veterans." *United States v. Oliver*, 608 F. Supp. 3d 1113, 1119 (2022) (Thompson, J.) (citing Lois James & & Natalie Todak, *Prison Employment and Post-*

*Traumatic Stress Disorder: Risk and Protective Factors*, 61 Am. J. of Indus. Med. 725 (2018). While the Court in *Oliver* granted a substantial variance, undersigned counsel recognizes the facts in Mr. Jenkins case are different and cites *Oliver* to show that a District Court in the Middle District of Alabama recognized the significance of PTSD. In *Oliver,* the defendant beat two handcuffed men with his fists, feet, and a collapsible baton.

> The men were later brought to ADOC's healthcare unit, where it was determined that they had sustained serious blunt-force trauma to their backs, stomachs, legs, arms and heads. One suffered broken bones, muscle strains, and the loss of mobility in his wrist; the other continues to suffer from chronic back and arm pain and migraine headaches.

The government moved for a seven-level departure for substantial assistance caused by Mr. Oliver's cooperation. After the Court's acceptance of the seven-level departure for substantial assistance, the offense level was 21 and his criminal history category was I, creating a sentencing range of 37 months to 46. The Court granted an additional seven-month variance based upon Mr. Oliver's PTSD. The Court in *Oliver* noted,

> The evidence reflected that Oliver has post-traumatic stress disorder (PTSD) caused by unsafe working conditions resulting from ADOC's failure to provide an adequate number of staff for its prisons. It also reflected that Oliver's PTSD contributed to his offense conduct; that ADOC had failed to screen him for mental-health issues; and that his supervisors had failed to give him the support that he needed, even when he indicated that he needed help. Based on the evidence, the court determined that, despite the atrocity of Oliver's conduct, a variance was warranted.

*Id.* at 1117.

Considering Mr. Jenkins's history and characteristics, 18 U.S.C. § 3553(a)(1), specifically his troubled childhood, mental and emotional condition, and his military service, a downward variance from the Guidelines range of 87 to 108 months' imprisonment is warranted. Specifically, he requests a sentence of 61 months' imprisonment.

Such a sentence likewise serves § 3553(a)'s goal of avoiding unwarranted sentencing disparities. According to the JSIN database the average sentence imposed where the Criminal History Category is I and the Offense Level is 29, is 61 months. (PSR at ¶ 86.). Such a sentence is appropriate here.

The Birmingham VA had taken steps to treat Mr. Jenkins for PTSD. Mr. Jenkins requests that this Court recommend cognitive behavioral treatment, a course of treatment recommended by the Birmingham VA. In addition, he requests that the Court recommend substance abuse treatment. Last, he requests that the Court recommend a that the BOP designate him to a facility as close to Birmingham, Alabama as possible.

        Respectfully submitted,

        KEVIN L. BUTLER
        Federal Public Defender

        **/s/Jake Watson**
        Jake Watson
        Assistant Federal Public Defender
        Office of the Federal Public Defender
        Northern District of Alabama
        505 20th Street North, Suite 1425
        Birmingham, Alabama 35203
        (205) 208-7170
        Jake_Watson@fd.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 12, 2023, I electronically filed the foregoing via this Court's CM/ECF system.

        Respectfully submitted.

        **/s/ Jake Watson**
        Jake Watson